I'm ready whenever you are. Thank you. May it please the court, Alan Arthur Shorherbrod of Tully Rinkey PLLC on behalf of the plaintiff appellant Michael, excuse me, Malcolm Wade Pipes who's sitting at council's table as a member of the bar. We requested 15 minutes for argument. I don't think we're going to need all that time because this is the second time this case is before the court with two judges from the same panel as previously in 2019. The facts are not in dispute. In 2019, we know, I think we know the facts so we can make this even quicker if that's where you want to go. Where I want to ask you is what is your position that this pre-authorization is not required in these circumstances or that there was a pre-authorization that was required or what? So a couple points with regard to the authorization. That is, we'll accept that's a narrow issue here is whether there was authorization. And you agree that's the issue? We agree that's the issue. Our argument, however, is that the authorization was incumbent on the lawful order to engage in the SBIP, in the self-paced fitness improvement plan. The sui generis nature of ordering the plaintiff appellant here to engage in that program and him actually engaging in that program was the authorization that was necessary. The other aspects where we believe the record... But just on that point, I mean, that really is your position that anytime someone's ordered, that either obviates the need for pre-authorization under the requirements or satisfies the need for pre-authorization? Any order whatsoever? Not any order. But the order here? The sui generis aspect of the order here. What order are we talking about? So going back to the facts, Mr. Pipes here was not able to pass the physical exam. I know that, but I mean, what's the order? The order was him to engage in the fitness program, the remedial fitness program, which he did engage in. Did you bring the record with you? Yes. Would you look at page 150? It's attachment 18 to the SFIP regulation. It's the memorandum for entry into a SFIP program. Yes. Do we have anything in the record that says that that's the order you're talking about? No, I don't think it's in dispute that he was lawfully ordered to engage in the SFIP. How was he ordered? Well, the opinion... Verbally? Was there a piece of paper? It was verbally and in writing. And what kind of writing? So the record supports... This is the sort of thing that initiates an SFIP, right? Attachment 18? This is a sample, correct. This is a sample attachment that's in the AFI that would have sufficed to place him in the SFIP program, but his placement in the SFIP program is not in dispute here. No, I know he was placed in it. That's correct. Right. So the issue, respectfully, is whether there was an additional layer that was required for him to receive authorization while... And the AFMAN says it is, right? Well, we don't believe the AFMAN applies. Okay. So what happens if we disagree with you on that point? AFMAN does apply. Then there's sections of the AFMAN that indicates that you could receive, you could be on IDT without pay and without points. That we respectfully would say applies to this issue. But if AFMAN applies, it requires pre-authorization. The AFMAN does discuss IDT authorization. It requires it. It requires it under the AFMAN. Yes, and I'm saying if we decide AFMAN applies, I didn't see any room for your client to succeed. Yes, but the AFMAN applies. To receive pay, you need at least four hours. To receive points, you need at least two hours. The record here supports through his affidavit in the record that he was not engaging for two hours or four hours. His participation in the exercise was under an hour. There are examples, it's actually 2.54 in the AFMAN that talks about all these additional aspects where there's no points provided. There's no pay provided. One of which is travel. Well, it says whether without pay. Yes, and there's a section there that also says without points. And that's under 2.5.4, which is one of these. The opinion below worked through all of that and concluded that the key question was whether or not there's any evidence of pre-authorization. And your theory is that there's sort of an initial authorization that lasts for three years. And the system doesn't contemplate that. It contemplates that every time you go and do an SFIP, you're supposed to go in and say, I'm going to do my SFIP tomorrow afternoon at three. I'm going to do this, this, and this. And the authorizer says, OK, that's the pre-authorization. But it's not clear exactly the form of the pre-authorization that is required. There isn't any evidence, according to the record that we're reviewing, of any kind of pre-authorization. Well, I would respectfully state that there are statements in the record that say that he was authorized to engage and participate in the SFIP. And that's from fellow officers after the fact. One of which is a commander during the relevant period of time, up until 2005. While the injury did occur in 2006, his enrollment in the SFIP happened at least twice that we know of, in 2004 and 2005. So I agree with you. Is the rejection of that evidence clear error? What the board, the legal advisors to the board, the board and then the court of claims, wasn't impressed by the anecdotal, as they viewed it, commentary from colleagues saying, well, he was authorized. So it struck me that the problem was the absence of any evidence here showing, given the fact that this is a hybrid or an odd kind of an organization, because everyone has been willing to assume in this case that there was an actual order. As opposed to nothing more than Attachment 18. Because Attachment 18 doesn't look like an order. Looks like an acknowledgment of a voluntary act taken by a reservist. Okay. Just to go back to the basics, just two points. So I can make sure I understand your argument. The first is that you're saying an order satisfies any requirement for authorization, because it's an order. So the two, it's sufficient. Is that one of your points? I must say, no, respectfully, it's not any order. It's this particular sui generis order. Okay. Designed for Mr. Pipe specifically. Okay. And your second argument is even if that we don't buy that, that the statute somehow, you parse the statute to say that the pre-authorization does not apply to your client, because he was not on points. He was not getting pay or points. Yeah. The government's response that I think was what the CAFC said, and the board was they relied on 10 USC 12315A, which says duty without pay shall be considered for all purposes as if it were duty with pay. Which is the response to your argument that because it was voluntary, that doesn't mean it's not included. I didn't see any real significant response to that in the gray brief. Do you have one? Our response to that is the relevant statute here of whether or not he was on inactive duty training is defined under Title 10, Section 101 D7. That discusses specifically under B, D7B, that IDT means special additional duties authorized for reserves by an authority designated by the secretary concerned and performed by them on a voluntary basis, which voluntary basis we argued was without pay or without points, in connection with the prescribed training or maintenance activities of the units to which they are assigned. That definition is tracked in the AFI, the Air Force Instruction 36-2910, also in the record. That definition is also tracked in the DOD financial management regulations in the record. It's also tracked in the DOD instruction at 4515.16. That section of the statute requires authorization. It says right in front, special duties authorized. Authorized, yes. So even if AFMAN doesn't apply, the statute requires authorization. Yes. So that seems to me to turn your case back to the question of whether this particular order of which we don't have a copy, that he was ordered to do this, constitutes a sufficient authorization, right? And the statute requires an authorization. So we can, the AFMAN argument falls away. So we agree. There needs to be authorization. Our arguments with regard to authorization was the nature of the order to participate.  My point is, I think your case actually boils right down to that. There's one argument. Because the second point that the presiding judge points out trails off after AFMAN and whether AFMAN is going to apply. Yeah. And the AFMAN and the AFI and the DODI, they're all interpretations, arguably, of the statute. The statute we believe is clear. You know, obviously the court can defer if it likes to. I just wanted to try to, for our benefit, to dial the case right down to the single point that we have to decide, which is whether or not in the circumstances of this case, the order which we determined the first time around was not unlawful, whether the order to him to participate over a three-year period in a SIF, whether that was sufficient authorization to satisfy the statute, right? And while we understand that this panel's, or the 2019 panel's opinion was limited to that polling as to whether he was lawfully... Right, but you see me like your case may actually be, and possibly a little better, given the sui generis nature of the case, which everybody agrees going back a long ways, and the whole question about he was ordered to do it. Well, if he didn't do it, could he be punished under the military code? And it just doesn't feel right, none of that. Maybe your argument really is that this court should look at entire circumstances of the case and try to decide what authorization means under subparagraph B. I think, certainly, that's part of it. But in the opinion... This wasn't argued as an injustice case. I mean, Sarikoski, I can't pronounce it, the case that you raised, is basically an injustice case. So it sounds like it's almost, not on all fours, but very close to what you have here. There is a big distinction in that case. Obviously, that was under the active duty of 30 days or more for the time and purposes. I understand that, I understand that. But the facts... The atmospherics of the case feel the same. But it was treated as an injustice case, and I don't think there's any room for us to crank open injustice that you haven't asked us to. Can I try to understand one part of your argument that I think I heard you say today? And is it that your position is not that any and every SFIP order would constitute pre-authorization for IDT status? It's more that there's something unique about PIPES's SFIP order, that inside of that order, there's something baked in for a pre-authorization of IDT. Is that your position? That's the position in a sense of the SFIP that was designed specifically for Mr. PIPES was to exercise five times per week, while the instruction at the time only required three times per week. In addition... So what... Okay, so if that's your argument, what is it about the nature of this particular SFIP order that we don't have in front of us that would make us believe, okay, this one is special, this one is unique, this one not only is an order to do this self-fitness program, but it's also converting someone from civilian status to IDT status. I think what is unique about that is the lack of payer points, specifically to the SFIP order. If that was a requirement to be on IDT, he was specifically told you cannot receive payer points. He was specifically told you cannot submit a Form 40A, which that's been resolved. Is there any regulation or guidance document anywhere that says that you can be on IDT with no pay and with no points? Well, the AFI talks about without pay, specifically. Right, but there's nothing anywhere that I'm aware of that's any kind of source that says, and by the way, there's another subcategory of IDT. It's IDT with no pay and no points. There's nothing like that that I could read, right? Your Honor did note to a different statute under Title 10, where you could be on duty without pay, that will be regarded as the same as with pay. It doesn't say specifically IDT, but there certainly are duties that occur without pay. All right, you're well into your rebuttal. Let me hear from the other side. If there's nothing further, thank you. Good morning. Good morning. May it please the court. If I may, I'd first like to, as the court has pointed out in the discussion with counsel for Mr. Pipes, there is a evidentiary question that is really the heart of what the board did here, and it's finding that there wasn't sufficient evidence to find any kind of order to engage in IDT. Judge Clevenger already pointed to this. You just used the word order. What about authorization? I thought we were talking about whether there was an authorization here, not an order. Yes, Your Honor, and I apologize. I think I sort of used them interchangeably, but there was no... Well, that's a problem for me because that's the basis of this case. Understood, Your Honor. You got an order, but it wasn't preauthorized, and that's why his case fails. So tell me why you think the two were interchangeable. Your Honor, let me clarify. I'm not talking about any order. I am talking about an order that specifically authorizes IDT, or a specific authorization. This is why I'm using it interchangeably, that there has not been an authorization of IDT. The order that is discussed in the evidence that I want to put in front of the court is specific to the SFIP program. It says you will enroll in SFIP. There is nothing in this record that suggests that that order had anything to do with placing Mr. Pipes in an IDT status. As Judge Clevenger pointed out, the sample memo that is attached to the SFIP program doesn't discuss IDT in any way. Right, but there's no evidence that there was even one of those documents in this case. I mean, I probably shouldn't have raised it. I raised it for purposes of my knowledge of what went on. That's correct, Your Honor. I don't think you can rely on the absence of that. Absolutely, Your Honor. So I think the two pieces of evidence that I can point to in this record that discuss the SFIP order are at, in particular, 103. Appendix 103. What do you mean? The SFIP order? The order that required Mr. Pipes to participate in the SFIP program. That was Colonel Don. What was his name? Well, there's a discrepancy, Your Honor. Frankly, so if I may, I'll point that out. The first, I'm sorry, I said 103 is an affidavit. What page is this in the record? Appendix 103. 103. Is an affidavit from Mr. Pipes' commander from 2003 to 2005. I don't want to read from this because it is part of the confidential record, but I would point the court to the paragraph that begins second, sort of in the middle of the page. Is the entire record confidential? No, Your Honor. This page isn't marked confidential? Okay, fair enough. For some reason, I had brackets around it, which I assumed meant confidential. Well, let's not take any chances. Let's not take any chances. Let's just read what you say under second. Yes, Your Honor. I just want to be careful about that. Where are we on 103? In the middle, the paragraph that begins second. Okay. And then, so this is the description from Mr. Pipes' commander about what happened to get him into the SFIP program. And then on appendix... Is that paragraph what you're relying on? That paragraph, can I read it all? It's not marked confidential? Well, what is the point you're trying to make about this document? Because I'm not getting... This is the extent of the evidence about this order. This, and then I would point the court again. So your point is the order to participate in SFIP is not sufficient to create authorization for IDT? Yes, Your Honor. That is the point. So why not? Your Honor, for a number of reasons. The first of which was discussed, I think, extensively by the court below that the regulation, the ACMAN provision that governs IDT, the 36-8001 requires authorization to be done on the form 40-A. And proceeding below, the government gave up on that argument and said that form doesn't matter. That was thrown out. Well, Your Honor, I think that form doesn't necessarily... There doesn't need to be evidence that form was executed in advance. And by the legal advisor to the board, you don't need to have that. You don't need to have that to initiate the IDT, but it has to document the IDT process at the very least. It isn't necessary? I'm not sure that that was the finding, Your Honor. I think it is necessary. And frankly, though, even if it is not, there needs to be something to demonstrate that authorization for a military duty status was given. I'm sure the matter is, I don't understand your argument at all based on this paragraph we can't talk about. And if we have to clear the court so we can talk, Mr. Pipes is currently entitled to a full hearing here. Understood, Your Honor. How do we waive confidentiality, Your Honor, if it comes down to that? And I will be clear. I don't think... You don't waive confidentiality, right? Sorry? You just waive confidentiality. Yeah, and I'm okay with that. I don't think there is anything that is necessarily protected. What is this? What is the purpose of your citation to this paragraph? It says he was formally enrolled in the program the same day. Yes, Your Honor. And that suggests that he received this document, Form 18. Yes, or something like it. The Air Force flies by the rules, right? Yes, Your Honor. And if there's a rule that tells you how to do a SFIP and it says you enroll them and you use Attachment 18, it would be odd that Colonel Donnan didn't use 18. I agree, Your Honor. So he was enrolled, right? Yes, Your Honor. And then it says he was ordered to exercise at least five times a week. That's the only order here. Correct, Your Honor. And that is my point. And then I think if the court will also... So what you're trying to say is that's the only order he got? Yes, Your Honor. The order was to participate in the program. There is no authorization or additional order or no authorization... But his argument is you don't need it. I think you do, Your Honor. His argument is that in the interstices of this odd situation where you ordinarily aren't ordered to do it, if you are ordered, the order satisfies the authorization requirement. Well, do we know that? I mean, can I just... Because do we know that? I don't know that. I mean, does it normally... Does it happen a lot? And because you're ordered, you assume that's pre-authorization? Is there any evidence... No, Your Honor. ...that pre-authorization has been accepted or assumed based on this kind of order? There is not, Your Honor. The authorization for duty status or an order, putting someone in duty status is a very explicit step that is done, as Your Honor pointed out, through the proper channels with the proper paperwork. There are certainly... Is it done with an order? Can you put someone in IDT status as an order? I think it would be called, perhaps, termed an order. I don't know about the terminology, but it would certainly be explicit, Your Honor. It's something that would inform... Something beyond what we pointed to on JA-150? Yes, Your Honor. This is... You're telling me, typically, if you're going into an SFIP, there would be a document in addition to page 150? No, Your Honor. I'm saying the SFIP is not authorized for... The exercise that someone does subject to an SFIP is never authorized for IDT status. But that's not the order you're talking about in terms of preauthorization, even though Judge Clevenger is correct that the court below held that, and I think the government agreed, we don't need this exact form filled out exactly the way it's required in order to establish preauthorization. There can be other evidentiary bases to establish there was preauthorization, but your position is that's true, but there are none such evidentiary basis in this case? Yes, Your Honor. That is accurate. If I may, I also just want to point the court to... And again, this is... Didn't you say there were two places in the record? Yes. The other is Appendix 92, which is Mr. Pipes' own affidavit. 92? 92. And it's specifically paragraphs 13 and 14. This is Mr. Sipes' declaration? It's Mr. Pipes' affidavit from, yeah, an early part of the Court of Federal Claims case. Again, is there a waiver of confidentiality on this? Yes, Your Honor. What is it you want to show us on this? It, to a certain extent, tracks with the language in the previous memorandum or declaration that I pointed out, that all it says is that he was enrolled in SFIP. It indicates that the requirements of the SFIP, he characterizes as mandatory, that he had to exercise as directed, but there is nothing suggesting that that authorization included an authorization to be in a duty status for that exercise. Well, look at paragraph 16. It kind of suggests the reverse, and I don't understand the ins and outs of how this happens, but he said he was not permitted to submit a form for it, 40A. Yes, Your Honor. I would say that's precisely because he was not authorized to be in that status. The form 40A is for IDT. I believe, at least in current regulations, the SFIP program explicitly states that it cannot be performed for, well, a reservist cannot be designated to IDT status to perform the SFIP. So I think that's just further evidence that he was not in that status. The thing that I think unsettles some of us is he's in the military, and he was ordered to do this, presumably so he could remain. It was a necessary thing, and I think we all agree that this physical fitness thing was a problem. Yes, Your Honor. And it needed to be cured for the benefit of the military, as well as Mr. Pipes. Yes, Your Honor. So he gets ordered to do this, and so you're saying that notwithstanding that he was ordered to do this as a member of the military, if something happened to him while it was being done, it was all on him and not on you. And that kind of seems a little troubling. I understand that, Your Honor. So what, yes, tell me, comfort me. Comfort us. Yes, Your Honor. I want to put this in the broader context of some of these, the requirements for being in the military. The SFIP fitness requirements are not the only fitness requirements out there. For example, the regulation that Mr. Pipes' counsel pointed to required all reservists to exercise three times a week off duty. That was already a requirement that existed. There are... And if they hurt themselves or something happens to them while they're exercising, they get no... They are not considered to be in a duty status. That's correct. They do not get disability retirement. They, as Mr. Pipes did, there are certainly other avenues through the VA to the extent that it was, in fact, related to service. But they would not be considered for disability retirement. There are other requirements that are mandatory. The appearance requirements, dress requirements, all of those are activities that require time outside of duty status to perform that are mandatory, that must happen. And service members are not placed into a duty status to perform those activities. Pressing uniforms, haircuts, additional fitness. So while we... Yeah, but all of those seem a little less vulnerable, make the person a little less vulnerable than this quite extensive exercise regime. Well, Your Honor, I don't know that... It's a matter of degrees, I guess, Your Honor. There is already a fairly significant regulation requiring exercise outside of duty. And this certainly ups it a bit. So what was his choice? If he happened to think of it or realize it and said, wait, I'm not going to do this unless you tell me that I'm covered by all these sort of regimes that will protect me if anything happens. And the answer would have been, well, you're not. And then what does he say? Therefore, I'm resigning because I'm refusing to comply with the order. Or can he say, I'm not going to comply with the order, but let's move on to other stuff? Your Honor, I think the path that seems like it would have been the most appropriate in this case would have been to bring up... And we recognize that there were failures by a lot of parties here to bring up the fact that there was hypertension. You can get excused from certain aspects of the fitness requirements for particular conditions. This seems like it should have been. I think there is evidence in the record demonstrating that medical personnel thought that he should have... This should have been brought to the attention of his superiors, either by Mr. Pipes, by the medical personnel, and he could have been exempted to the extent that he felt that this was dangerous for him. Does he have a cause of action here based on the way the facts went down of him getting what you're offering up here? He should have gone to a medical person. The medical person should have diagnosed him as being an endangered. That's what happened. And it was the medical person employed by the employer, by the military, that made that diagnosis. So is there... Does he have any recourse on that end of this scenario? I don't believe so, Your Honor. I will note, Mr. Pipes has argued that... Well, you just told me four minutes ago that, yes, he can get out of this order if he's got a diagnosis of hypertension. Yes, Your Honor. So now you're saying he can get out of this order if he has a diagnosis of hypertension and he brings that diagnosis to the attention of his commanding officer. So the obligation is on him to bring that diagnosis and not to the military people, military physicians who examined him. I think it was on both, Your Honor. And again, I was addressing what should have happened at the time. Well, so if there was an obligation on both, both includes on the military personnel that examined him. So I guess I'm back to my question. Is there potential for some recovery or some cause of action for a failure of them to bring this to the attention of his commanding officer? And I'm sorry, Your Honor, but I think the unsatisfying question or answer is probably not, although I certainly can't say that for sure. I don't want to... That doesn't help on the question in front of us. It doesn't. Whether or not there is authorizations required, and if so, was there any? It doesn't, Your Honor. And I completely agree with that, although I certainly understand the uncomfortable nature of this case in Mr. Pipe's position. I see him over my time. But the corrections board sufficiently appreciate the unusual nature of the circumstances here where there was an order to engage in the SFIP, whereas I think you were telling me typically there's not an order. Am I right that there typically is not an order? Typically, the SFIP program is voluntary. So I believe typically there is not an order saying you are required to do the things. And we established that this is an unusual case and that there was an order for him to engage in the SFIP. Yes, Your Honor. In other words, it was not voluntary? It was required? Yeah. And would he, if he had refused to do it, if he said, excuse me, I'm not going... I don't want to do that. Could he have been punished? Yes or no? Potentially, yes. I think it's unlikely, Your Honor. I have to say... We need to get the parameters. Yes, Your Honor. And I think this is something that was covered... This is unusual because ordinarily, if you are engaged, you get a voluntary participation in SFIP and you quit, the only consequences are that when you go in for your regular physical checkup, you're going to flunk. Right? Yes, Your Honor. Because he was put on this because he flunked in his regular physical during while he was in duty, which meant that the order was lawful and not unlawful. Right? Yes, Your Honor. So the circumstances are without this kind of order here that if he decides he doesn't want to do the SFIP, that's his choice. What it probably means is he's going to flunk the regular exam and then he's going to get mustered out of the reserve. That's correct, Your Honor. So I can't answer the question with a solid answer because it was an order that this court has found to be an actual order and a valid order. Given in this case, in your agencies and the government's firm argument is that HACMAN doesn't apply that whole regulation. Does apply. Does apply. Yes, Your Honor. Can I, I'm just a little confused by some of the back and forth here. Firstly, I thought you said that there's already a requirement that people do exercise three times a week. There is, Your Honor. Is that voluntary or involuntary? I don't believe that's voluntary, but I also don't believe it's tracked. OK. And then on the point you made about whether when Judge Clevenger asked you if he had refused to abide by the order, could he or would he have been punished? I think your answer was yes, likely. And I don't understand that because I thought you had told me a few minutes ago that if a doctor has said that there's a problem, then gets him off the hook or it creates exigent circumstances. So in this circumstance, if he had said, I can't do this, look at these medical reports I just got, would he have been punished for failure to follow the order in those circumstances? In those circumstances, probably not, Your Honor. I mean, there are certainly the regs have procedures for how you're supposed to respond when there is a diagnosis of something that is likely to be dangerous if you keep participating in the fitness program. If he were to simply say, I don't want to do this, potentially there could be ramifications for defying an order. But isn't it true, I think Judge Klobuchar was alluding to the consequences would be shown that he would flunk the medical exam and that would be the consequence, not that he would necessarily be compelled, he would be punished for failing to follow the order. He would be, I don't, you don't know the answer. I don't know the answer to that. Practically speaking, I think it would have been highly unlikely that he would have been punished simply for standing up and saying, I'm not going to do this for a variety of reasons. One of which is I assume the rationale would be, I have hypertension, I should not be running. That would have gone through the processes and it probably would have changed his status. I think there is also from the legal advisory opinions that have come out in the order, I think nobody believed that he really should have been given a mandatory order. So I assume through the processes there, he may not have been punished. But I do think it is also true that the results, if the results had been failure to perform adequately in the next physical exam, that certainly could have resulted in consequences to include being removed from service. And that's irrespective of an order at all. In a regular exam? In a regular fitness assessment. Sure. Well, the purpose of the regular exam is to see whether you're fit to continue to serve. Yes, Your Honor. And I think that would have likely been the path that would have occurred had the stroke not happened. Thank you. Thank you very much, Your Honor. Will we store four minutes of rebuttal? I'll try to be very brief. Their position that the 40A form was a requirement is not the case and that's been decided by the Claims Court. No, I think she backed off once I pointed out to her, we pointed out to her that the government had conceded you didn't need that precisely. The last part of their presentation was the evidence of the hypertension that had he raised this hypertension to the medical squad or to his commander, he would have been exempt, potentially. The opinion below by this court and the record supports that he didn't know he had hypertension until for the first time he received his medical records on October 15, 2010. That was kept from him. At the time of his injury, he had no clue he was hypertensive or had high blood pressure and the record supports that. I thought he went, well, he went to the physician, right? Because he wasn't feeling well or something, right? At the time when he had a stroke, he went to the doc, well, he went to the emergency room that same night where he was diagnosed with the stroke, with the CBA. But the evidence leading up to the stroke, the hypertension, the high blood pressure was kept from him. As we can tell, this record has very little medical records. Most of it's gone. It was kept from him. Did he ask for it and not receive it? He asked for all of his medical records and they said, no, you can't see them. It's gone. Most of it is gone. This is what he was able to obtain from the Air Force. And it's unfortunate because he's the one who suffered ultimately. He's the one who was injured. I don't see what that's got to do with the authorization issue. So to that point, Your Honor. It just looks to me like it's still a question of whether or not there was authorization to put him in IDT status. So what I just heard the government say is that the SFIP is never authorized for IDT, period. Which? They just argued that this SFIP program is never authorized for IDT. I don't know. I didn't understand it was never. It says that it has to be authorized. And it was never authorized in this case. I don't, did she say never in a million, never in any circumstance anywhere? It's never authorized? That's what I heard from the government is that the SFIP by its nature is never authorized for IDT. The SFIP by its nature, which is three times per week of exercise is not authorized for IDT. Oh yeah, because she said the norm is that everybody gets the three days of authorize, you know, three days and it's not voluntary and it's not authorized for IDT yet. So then what status are you in? What about the government's argument that there are only two pieces of evidence here that relate to the so-called order? Do you agree with that? That she cited page 92 and page 103? No, the order to be enrolled in the SFIP? The order to be enrolled in and be required to perform. So the order to be enrolled was both verbal and written, the evidence we believe is more than those two affidavits. It's the affidavits of the other commanders, his own affidavit that's later in the record. There is no, there's nothing like the attachment sample that you provided. We can see to that, that's not here. But it's also, I don't believe in dispute that he was ordered to participate in the SFIP. I believe the court resolved that in 2019. The issue is the authorization. Was there another layer of authorization that was required for him to exercise pursuant to the SFIP? Let's come back to a typical SFIP for which there is no order, there is only the authorization, pardon me, no authorization, there's a letter, you're enrolled in it. And it's voluntary, correct? Not talking about the one that Mr. Seibch is in. It's a voluntary program. You do it on your own. You're not ordered to do it. If you don't do it, there are no consequences. Except that when you come back in for your regular checkup during regular NIET status thing, you're probably going to be mustered out. Right. That's a typical one. Right, the FI supports that. No pay, no points, no nothing. You're just supposed to, and they give you, they work it out with the person that creates the need for you to do this. Here are the kind of things you should do. The object is to get you qualified so the next time you come in for a regular checkup in IDT status, you'll pass, right? That's what it's for. Correct. This one is strange because, although in all other respects, that was the object of the whole program, right? If there hadn't been an order here, right? Then the fact that Mr. Such underwent an adverse effect while doing the SFA would be, it would not be IDT, right? Well, the very nature... Absent the order. Right, but the very nature, the very nature of there being an SFA. I'm going to pare the case down. Yeah, I understand. So you would agree that absent the order, then he would not be what the ordinary performance of SFIP does not put one in IDT status. I would concede that to be the general point, but here... No, we're just trying to get the parameter. I think that's what the government was trying to say is an ordinary case, you aren't an IDP, so just period, you're not. And if you have a heart attack, it's too bad, it's on you. And under these... Similar to the requirement that you're supposed to do twice a week or however many exercises. So what IDP is, what SFIP is, that it's sort of a customized version of the exercise you're supposed to do ordinarily free and on your own, designed for you, because of problems that have been indicated to try to help you be ready to pass the real exam, right? Correct, and that would... The fact that there was an order, does that change the whole concept for whether he was put into IDP status to perform the SFIP? Which goes back to the point as being ordered to engage was the authorization to engage, and nothing else is required. Okay, we have your argument. Thank you. We thank both sides of the case. We have time limits for both sides. I believe a lot of that, so it's not... Thank you. Thank you for your argument.